UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON CLEVELAND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LUDWIG INSTITUTE FOR CANCER RESEARCH LTD., et al., <br><br> Defendants. | Case No.: 19-cv-02141-JM (JLB) <br><br> **[REDACTED] ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS/ COUNTER-CLAIMANTS' MOTION FOR SANCTIONS FOR PLAINTIFFS' VIOLATION OF THIS COURT'S PROTECTIVE ORDER** <br><br> **[ECF No. 80]** |

Before the Court is a motion for sanctions filed by Defendants/Counter-Claimants Ludwig Institute for Cancer Research Ltd. ("Ludwig"), Chi Van Dang, Edward A. McDermott, Jr., and John L. Notter (collectively, "Defendants"). (ECF No. 80.) Defendants move for an order sanctioning Plaintiffs/Counter-Defendants Don Cleveland, Arshad Desai, Frank Furnari, Richard Kolodner ("Kolodner"), Paul Mischel, Karen Oegema, and Bing Ren (collectively, "Plaintiffs") for violations of the Protective Order issued in this case. (*Id.* at 2.) Plaintiffs filed an opposition. (ECF No. 83.) Defendants filed a reply. (ECF No. 85.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for sanctions.

///

# I.    BACKGROUND

## A.    *Ludwig I*

On November 7, 2019, Plaintiffs commenced the above-captioned action, *Cleveland, et al. v. Ludwig Institute for Cancer Research Ltd, et al.*, Case No. 19-cv-02141-JM-JLB (S.D. Cal.) ("*Ludwig I*"). (ECF No. 1.) On July 8, 2020, Plaintiffs filed a Second Amended Complaint ("SAC"), the operative complaint. (ECF No. 26.)

According to the SAC, Plaintiffs are internationally acclaimed cancer research scientists and physicians. (SAC ¶ 1.) Ludwig is an international nonprofit organization dedicated to finding a cure for cancer that operates multiple cancer research branches. (*Id.* ¶¶ 1, 142.) In 1991, Ludwig entered into an "Affiliation Agreement" ("the AA") with the University of California at San Diego ("UCSD") to establish a San Diego Branch ("the Branch"). (*Id.* ¶ 51.) Ludwig agreed to conduct "active" and "continuous" medical research to "discover, develop, or verify knowledge related to causes, diagnoses, treatment, prevention and control of cancer." (*Id.* ¶ 53.) Ludwig also agreed to "bear the costs directly related to conducting the research program." (*Id.* ¶ 62.) The term of the AA is coterminous with a lease agreement for research facilities between Ludwig and UCSD, which allows Ludwig to terminate the lease no earlier than December 31, 2023. (*Id.* ¶¶ 4, 16, 56.) In addition to leasing its facilities to Ludwig, UCSD agreed to: (1) grant privileges for the practice of medicine at its hospital to qualified members of the medical staff at the Branch; (2) grant "academic recognition and titles" to qualified Ludwig employees; and (3) make full time equivalency positions available for Ludwig employees. (*Id.* ¶ 154.)

Between 1996 and 2016, Ludwig hired Plaintiffs to work at the Branch. (*Id.* ¶¶ 26–32.) In 2018, Ludwig announced that it would "cease funding the Branch and otherwise halt the 'continuous active conduct of medical research' at the Branch." (*Id.* ¶ 15.) Effective January 1, 2020, Ludwig "terminated all funding for Plaintiffs' laboratories." (*Id.* ¶ 18.) However, "Ludwig continues to fund at least part of the rent due [to UCSD] and it continues to pay the Plaintiffs' own salaries and benefits, but nothing more." (*Id.*) As a result, Plaintiffs' "[l]aboratories and ongoing translational research programs have ceased

or substantially curtailed ongoing research projects, except to the extent that they have access to outside grants." (*Id.*)

In their SAC, Plaintiffs asserted the following claims against Ludwig: (1) breach of the AA; (2) breach of Plaintiffs' Intellectual Property ("IP") agreements; (3) breach of Plaintiffs' lab contracts; (4) breach of the implied covenant of good faith and fair dealing; (5) promissory estoppel under the AA; (5) declaratory relief; and (6) false light. (SAC ¶¶ 145–70, 182–303.) Plaintiffs also bring a claim against all Defendants for defamation per se. (*Id.* ¶¶ 171–81.) On November 25, 2020, the Honorable Jeffrey T. Miller dismissed Plaintiffs' claims for breach of the AA and breach of Plaintiffs' IP agreements. (ECF No. 32 at 28.) He also dismissed Plaintiffs' declaratory relief claim with respect to Plaintiffs' claims based on the AA and IP agreements, and their claim for breach of the implied covenant in the AA and lab contracts. (*Id.*)

### B.   *Ludwig II*

On May 5, 2021, Plaintiffs filed a separate lawsuit against Ludwig: *Cleveland, et al. v. Ludwig Institute for Cancer Research Ltd.*, Case No. 21-cv-00871-JM-JLB (S.D. Cal.) ("*Ludwig II*"). (*Ludwig II*, ECF No. 1.) In *Ludwig II*, Plaintiffs bring claims against Ludwig for: (1) retaliation in violation of California Government Code § 12940(h); (2) age discrimination under the Fair Employment and Housing Act ("FEHA"); (3) wrongful adverse employment action in violation of public policy; (4) failure to timely pay wages; and (5) violation of California's unfair competition laws. (*Id.* at 13–21.) Kolodner also brings a separate claim for retaliation in violation of California Labor Code § 1102.5. (*Id.* at 12–13.)

On May 12, 2021, *Ludwig II* was low number transferred to Judge Miller and the undersigned judge for all further proceedings. (ECF No. 4.) On July 2, 2021, Judge Miller denied Plaintiffs' motion to consolidate *Ludwig I* and *Ludwig II*. (ECF No. 13.) On July 6, 2021, Ludwig filed a motion to dismiss all claims in the *Ludwig II* complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) No answer has been filed.

///

### C.     Protective Order

On February 19, 2021, the parties filed a joint motion for entry of stipulated protective order in *Ludwig I.*  (ECF No. 44.)  The proposed protective order was largely based on the Southern District of California's model protective order, which is available on the district court's website.   The proposed protective order also contained the undersigned judge's required language, as set forth in her Civil Chambers Rules.  *See* J. Burkhardt Civ. Chambers R. § VI.B.  On February 22, 2021, the Court granted the joint motion and entered the parties' stipulated protective order ("Protective Order").  (ECF No. 45.)

The Protective Order was entered for the purpose of protecting the confidentiality of documents and information that are, for competitive reasons, normally kept confidential by the parties.  (*Id.* at 1.)  These materials "may contain trade secret or other confidential research, technical, cost, price, marketing or other commercial information, as is contemplated by Federal Rule of Civil Procedure 26(c)(1)(G)."  (*Id.* at 2.)  To serve this purpose, the Protective Order permits each party to the litigation to designate materials as "CONFIDENTIAL" or "CONFIDENTIAL—FOR COUNSEL ONLY."  (*Id.* ¶ 4.)  The Protective Order permits the designations as follows:

   a.    Designation as "CONFIDENTIAL": Any party or non-party subject to this Order may designate documents or other information in this action as "CONFIDENTIAL" only if the designating party or non-party and their counsel has an articulable, good faith basis to believe that each document or other information designated as "CONFIDENTIAL" qualifies for protection under Federal Rule of Civil Procedure 26(c).

   b.    Designation as "CONFIDENTIAL—FOR COUNSEL ONLY": Any party or non-party subject to this Order may designate documents or other information as "CONFIDENTIAL—FOR COUNSEL ONLY" only if the designating party or non-party and their counsel has an articulable, good faith basis to believe that the documents or other information in this action designated as "CONFIDENTIAL—FOR COUNSEL ONLY" qualify for protection under Federal Rule of Civil Procedure 26(c) and are otherwise among that considered to be most sensitive by the designating party or non-party.

19-cv-02141-JM (JLB)

(*Id.* ¶ 4(a), (b).)

The Protective Order also sets forth who may view the materials designated as "CONFIDENTIAL" or "CONFIDENTIAL—FOR COUNSEL ONLY," as follows:

> 8. Information designated "CONFIDENTIAL—FOR COUNSEL ONLY" must be viewed only by counsel (as defined in paragraph 3) of the receiving party, and by independent experts under the conditions set forth in this Paragraph, by court personnel and by those persons identified in Paragraph 9 subsections (c) and (d). . . . .
>
> 9. Information designated "CONFIDENTIAL" must be viewed only by counsel (as defined in paragraph 3) of the receiving party, by independent experts (pursuant to the terms of paragraph 8), by court personnel, and by the additional individuals listed below, provided each such individual has read this Order in advance of disclosure and has agreed in writing to be bound by its terms:
>
> a) The named parties to this action;
>
> b) Executives and/or directors of defendant Ludwig Institute for Cancer Research Ltd. who are required to participate in policy decisions with reference to this action;
>
> c) Technical personnel of the parties with whom Counsel for the parties find it necessary to consult, in the discretion of such counsel, in preparation for trial of this action, including, without limitation, reproduction and digital discovery services, graphics and trial support vendors, jury consultants and mock jurors, and appellate brief printing services; and
>
> d) Stenographic and clerical employees associated with the individuals identified above.
>
> 10. With respect to material designated "CONFIDENTIAL" or "CONFIDENTIAL—FOR COUNSEL ONLY," any person indicated on the face of the document or in any metadata contained in such document to be its originator, author or a recipient of a copy of the document, may be shown the same.

(*Id.* ¶¶ 8–10.)

The Protective Order further provides that "[a]t any stage of the[] proceedings, any party may object to a designation of the materials as confidential information," in the following manner:

19-cv-02141-JM (JLB)

> The party objecting to confidentiality must notify, in writing, counsel for the designating party of the objected-to materials and the grounds for the objection.  If the dispute is not resolved consensually between the parties within seven (7) days of receipt of such a notice of objections, the objecting party may move the Court for a ruling on the objection.  The materials at issue must be treated as confidential information, as designated by the designating party, until the Court has ruled on the objection or the matter has been otherwise resolved.

(*Id.* ¶ 13.)

The "restrictions and obligations" set forth in the Protective Order "will not apply" to any information that:

> (a) the parties agree should not be designated confidential information; (b) the parties agree, or the Court rules, is already public knowledge; (c) the parties agree, or the Court rules, has become public knowledge other than as a result of disclosure by the receiving party, its employees, or its agents in violation of this Order; or (d) has come or will come into the receiving party's legitimate knowledge independently of the production by the designating party.  Prior knowledge must be established by preproduction documentation.

(*Id.* ¶ 22.)

The "restrictions and obligations" set forth in the Protective Order will also "not be deemed to prohibit discussions of any confidential information with anyone if that person already has or obtains legitimate possession of that information."  (*Id.* ¶ 23.)  Moreover, nothing in the Protective Order bars "counsel from rendering advice to their clients with respect to this litigation and, in the course thereof, relying upon any information designated as confidential information, provided that the contents of the information must not be disclosed, except as otherwise permitted [in the Protective Order]."  (*Id.* ¶ 18.)  In addition, the Protective Order provides that "[n]othing within this Order will be construed to prevent disclosure of confidential information if such disclosure is required by law or by order of the Court."  (*Id.* ¶ 20.)

However, the Protective Order also provides the following:

> All confidential information designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" must not be disclosed by the

receiving party to anyone other than those persons designated within this Order and must be handled in the manner set forth below and, in any event, must not be used for any purpose other than in connection with this litigation, unless and until such designation is removed either by agreement of the parties, or by order of the Court.

(*Id.* ¶ 7; *see also* ¶ 14 ("All confidential information must be held in confidence by those inspecting or receiving it, and must be used only for purposes of this action.").)

## II.   LEGAL STANDARDS

Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26.  Fed. R. Civ. P. 37(b)(2); *see Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-CV-01846-LHK-PSG, 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014); *Life Techs. Corp. v. Biosearch Techs.*, Inc., No. C-12-00852 WHA JCS, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012).

Rule 37 "authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986).  "The choice among the various sanctions rests within the discretion of the district court." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980).  However, the court's authority to issue sanctions "is subject to certain limitations[.]" *Nat'l Med. Enters., Inc.*, 792 F.2d at 910.  Specifically: "(1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order." *Id.*  Furthermore, a compensatory award is limited to the "actual losses sustained as a result of the contumacy." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983).  And where the sanction amounts to dismissal of a claim, the district court is "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith," and the availability of lesser sanctions. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citation omitted). "Disobedient conduct not shown to be outside the litigant's control" meets the standard of

7

willfulness, bad faith or fault. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006) (citations omitted).

A court may also punish "discovery violations" pursuant to its inherent power to regulate litigants and counsel who come before it. *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 430 (W.D. Wash. 2002) (citing *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)); *see also* CivLR 83.1(a) ("Failure of counsel, or of any party, to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or rule or within the inherent power of the Court"). However, "[b]ecause of their very potency," a court's "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO*, Inc., 501 U.S. 32, 44 (1991). A court may not impose sanctions pursuant to its inherent power unless it finds that a party or counsel has acted in "bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001); *see also Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (noting inherent-power sanctions must "be preceded by a finding of bad faith, or conduct tantamount to bad faith").

## III.  DISCUSSION

### A.  Production and Use of the April 2018 Minutes

Defendants claim that on January 14, 2020, as part of early discovery in this action and prior to the entry of the Protective Order, Ludwig produced to Plaintiffs the confidential minutes of an April 24, 2018 meeting of its Board of Directors (the "April 2018 Minutes"). (ECF 80-2 (Declaration of Alison S. Markowitz ("Markowitz Decl.")), ¶ 3; *see also* ECF No. 83-1 (Declaration of Alison M. Rego ("Rego Decl.")), ¶ 4.) Defendants produced the document with redactions[1] and initially designated it "OUTSIDE

---

[1]   According to Defendants, "[t]o facilitate early discovery even before the [Protective Order] was entered, the parties agreed that [Ludwig] could redact discussions in Board

COUNSEL EYES ONLY"[2] due to the sensitive nature of discussions of Ludwig's Board members.  (Markowitz Decl. ¶ 3.)   This document was produced with bates numbers LUDWIG_0000590 through LUDWIG_0000603.  (*Id.*)

On February 18, 2021, "Plaintiffs requested that Defendants reproduce the April 2018 Minutes with a reduced 'CONFIDENTIAL' designation to permit the document to be viewed by the individual Plaintiffs." (*Id.*)[3] Defendants agreed.  (*Id.*)  Accordingly, on March 8, 2021, Ludwig reproduced the April 2018 Minutes with a reduced "CONFIDENTIAL" designation, bearing bates numbers LUDWIG_0001437 through LUDWIG_0001450.  (*Id.*)[4]

On May 5, 2021, Plaintiffs, represented by separate employment counsel, filed *Ludwig II*.  (*Ludwig II*, ECF No. 1.)  Paragraphs 29 and 62 of the complaint "describe and quote language contained in the confidential April 2018 Minutes."  (Markowitz Decl. ¶ 4.) Defendants claim that prior to filing the complaint in *Ludwig II*, Plaintiffs neither asked Defendants nor the Court for permission to disclose the contents of the April 2018 Minutes. (*Id.*)  Plaintiffs contend they sent Defendants' counsel a "draft" of the *Ludwig II* complaint at 2:43 p.m. on May 5, 2021, three hours prior to its filing, asking if they had questions or

---

minutes that did not relate to the San Diego Branch and/or the plaintiff scientists."  (ECF No. 80-1 at 6, fn.1.)

[2]     Plaintiffs claim that all of the documents exchanged by the parties prior to the Early Neutral Evaluation Conference ("ENE") that was held on February 1, 2021 were marked as Attorneys Eyes Only "as an interim measure."  (Rego Decl. ¶ 4.)  Plaintiffs further claim that the April 2018 Minutes were attached as an exhibit to Defendants' ENE statement and "[c]ounsel agreed that the parties on both sides could view all exhibits to the ENE statements."  (*Id.*)

[3]     Plaintiffs contend that they had expressed in meeting and conferring prior to the entry of the Protective Order "that Defendants' earlier production should not be designated confidential."  (ECF No. 83 at 8.)

[4]     Plaintiffs contend that "[s]ubsequent to the [Protective Order] being entered on February 22, 2021, both Plaintiffs and Defendants reproduced all of the documents they had earlier voluntarily exchanged."  (Rego Decl. ¶ 5.)

19-cv-02141-JM (JLB)

wanted to discuss, but they did not respond.  (ECF No. 83 at 7, fn. 2; *see also* Rego Decl. ¶ 3.)

On May 5, 2021, Plaintiffs also sent Defendants' counsel copies of complaints they had filed with the California Department of Fair Employment & Housing ("DFEH"), which similarly quoted language from the April 2018 Minutes, along with a copy of the newly filed complaint.  (Markowitz Decl. ¶ 5.)

On May 10, 2021, Defendants' counsel emailed Plaintiffs' counsel objecting to the inclusion of language from the April 2018 Minutes in the *Ludwig II* complaint.  (*See* Rego Decl. ¶ 8; Markowitz Decl. ¶ 5.)  When Defendants subsequently asked if any other documents designated as "CONFIDENTIAL" had been shared in violation of the Protective Order and, if so, which documents, Plaintiffs responded they could not answer without revealing work product.  (*See* Markowitz Decl. ¶ 5; Rego Decl. ¶ 8.)

**B.  Parties' Arguments**

1. <u>Defendants' Arguments</u>

Defendants seek sanctions pursuant to the Court's inherent authority and Federal Rules of Civil Procedure 16[5] and 37(b) against Plaintiffs and their counsel for their willful violations of the Protective Order.  (ECF No. 80 at 2.)  Defendants argue that Plaintiffs and their counsel have violated the Protective Order "by (1) sharing with unauthorized third-parties—Plaintiffs' separate counsel in [*Ludwig II*]—the contents of certain confidential minutes of a meeting of the Institute's Board of Directors that the Institute produced in this action and designated as confidential under the [Protective Order], (2) quoting and relying

---

[5]    Plaintiffs dispute the applicability of Rule 16, which provides that a court, on motion or on its own, "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C); *see also O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 WL 6504064, at *1 (N.D. Cal. Sept. 6, 2017) (indicating that Rule 16 authorizes sanctions for violations of pretrial orders, including protective orders). However, the Court need not resolve that dispute here, as the Court finds it appropriate and sufficient to award sanctions pursuant to Rule 37.

on the contents of those Board minutes in Plaintiffs' publicly-filed complaint in [*Ludwig II*], and (3) disclosing at least the quoted language in submissions to [the DFEH]."  (ECF No. 80-1 at 4.)

Defendants seek entry of an order precluding Plaintiffs from using the confidential April 2018 Board meeting minutes in evidence or argument in connection with *Ludwig II*. (*Id.*)  Defendants also request "such other and further relief as this Court deems just and proper, including an order that Plaintiffs reimburse Defendants for reasonable attorney's fees and costs incurred in litigating this dispute and in moving to dismiss that part of Plaintiffs' age discrimination claim in their new action that is premised on the Board minutes." (*Id.* at 5.)

2.   Plaintiffs' Arguments

Plaintiffs "do not view citation of the single word[6] at issue in a related complaint as violating the [Protective] Order" because the Protective Order "includes an express carve-out for any disclosures required by law or by order of the court."[7]  (ECF No. 83 at 6.) Plaintiffs argue that this carve-out must apply to the disclosure at issue because "(i) California law requires that such information not be subject to any obligation of confidentiality, (ii) the Plaintiffs' disclosure was required by law to allege a claim and vindicate important rights of Plaintiffs as employees, and (iii) the [Protective] Order is against public policy to the extent construed to permit Ludwig to violate California's

---

[6]   Plaintiffs characterize this dispute as being about a single word, presumably because only one word in the *Ludwig II* complaint is in quotation marks.   This assertion misconstrues the Defendants' argument and is a mischaracterization of the contents of the complaint.  The language at issue in the complaint includes, ███████████ ████████████████████████  (*Ludwig II*, ECF No. 1 ¶ 62; *see also* ¶ 29.)  Beyond citing a "single word," the complaint purports to represent the contents of a portion of the board minutes.

[7]   Plaintiffs rely on paragraph 20 of the Protective Order which states, "Nothing within this Order will be construed to prevent disclosure of confidential information if such disclosure is required by law or by order of the Court."  (ECF No. 45 at 8.)

whistleblower laws." (*Id.*)  Plaintiffs further claim that in agreeing to the Protective Order, they "reasonably understood that it would not be interpreted to permit Defendants to unlawfully suppress information relating to unlawful employment practices, contrary to law and California's public policy." (*Id.*)  Plaintiffs assert that a "protective order is not intended to shield a party from claims for their wrongful conduct." (*Id.*)

Even if the Court disagrees, Plaintiffs argue that "there is no basis for sanctions" and such an award would be "unjust" as their "conduct was consistent with law and legal precedents and therefore substantially justified." (*Id.*)

## C.   Analysis

When Plaintiffs determined that they wanted to use the April 2018 Minutes in collateral litigation, they had two permissible options: (1) file a motion to de-designate the document pursuant to the procedure laid out in the Protective Order (ECF No. 45 ¶ 13); or (2) file a motion to modify the Protective Order.  *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) ("district courts have inherent authority to grant a motion to modify a protective order where 'good cause' is shown"); *see also* ECF No. 45 ¶ 27 ("The Court may modify the terms and conditions of this Order for good cause . . . at any time in these proceedings.").  For inexplicable reasons, Plaintiffs chose neither option.[8] Instead, Plaintiffs makes several post–hoc arguments in an attempt to justify their behavior. None of these arguments is persuasive.  For the reasons discussed below, the Court finds that Plaintiffs have violated the Protective Order.

///

///

///

---

[8]   Eventually, Plaintiffs filed a motion to de-designate nearly every document Defendants designated as confidential—including the April 2018 Minutes. (*See* ECF Nos. 67; 75 at 6.)  But, as discussed below, Plaintiffs did not file their motion to de-designate until a month after filing *Ludwig II*.

1          1.          Required by Law

2          Plaintiffs argue that the use and disclosure of the 2018 Minutes was "required by

3    law," and thus exempt from the provisions of the Protective Order.  (ECF No. 83 at 9–10.)

4    Plaintiffs base this argument on the following broad statements of law: (1) "[t]he law

5    requires claims to be filed, or the rights sought to be vindicated are lost;"[9] (2) "[t]he law

6    also requires that a pleading must contain a short and plain statement of the claim," citing

7    Federal Rule of Civil Procedure 8(a)(2); and (3) "Plaintiffs needed to allege basic facts

8    supporting their age discrimination claim in order to satisfy that legal requirement."  (*Id.*

9    at 11–12.)  To support their argument, Plaintiffs cite no binding or persuasive authority.

10   Instead, they rely on a single district court case out of the Eastern District of Pennsylvania,

11   *Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc.*, 821 F. Supp. 370 (E.D.

12   Pa. 1993) ("*Marine Midland*"), which appears to be an outlier and is inapplicable to the

13   present dispute.  (ECF No. 83 at 10–11.)

14         In *Marine Midland*, the plaintiffs brought a lawsuit to enjoin LLMD from breaching

15   the confidentiality provision of a settlement agreement.  *Marine Midland*, 821 F. Supp. at

16   371.  During the jury trial of a prior federal action involving the parties, an individual from

17   Jackson-Cross Company testified as an expert witness for LLMD, who was the plaintiff.

18   *Id.*  Cross-examination established that the expert's written loss computation contained

19   errors.  *Id.*  After those errors were exposed, the expert was unable to give an opinion as to

20   the amount of loss and the court struck his testimony.  *Id.*  Before the conclusion of the

21   trial, the parties reached a settlement, and the case was dismissed.  *Id.*  The written

22   settlement agreement signed by the parties, including LLMD, provided in relevant part:

23

24   _____

25

26   [9]      Plaintiffs claim they were "seeking to meet the timing under the Scheduling Order
     which set May 5 as the amendment and pleading deadline, so as not to be accused of being
27   dilatory."  (ECF No. 83 at 11; *see also* ECF No. 43 ¶ 2.)  However, Plaintiffs do not explain
     how that deadline, which only applied to filings in this case and which they could have
28   sought to modify in any event, required them to file a separate lawsuit by that date.

> [The parties] . . . agree not to disclose any of the *financial terms or conditions* of this Settlement Agreement and General Release *except as required by law or by judicial or administrative process or regulation*.  The non-disclosure agreement set forth in this paragraph is a material inducement to Marine and USLIFE to enter into this Settlement Agreement and General Release . . . . (emphasis added).

*Id.*   The settlement agreement was not made part of the record in the case, was not incorporated into an order of the court, and was not approved by the court. *Id.*

Weeks after the case was dismissed, LLMD brought an action in state court against Jackson-Cross claiming that LLMD had accepted "a settlement for an amount far less than the lost profits [it] sustained" as a consequence of the expert's errors. *Id.*  LLMD sought reimbursement in the state court action for the difference between the  correctly calculated lost profits and the reduced amount it had to accept in the settlement. *Id.*  LLMD did not disclose the amount of the settlement in filing the state court action, but it was inevitable that this information would have to be divulged at some point during the case. *Id.* at 372.

The plaintiffs initially sought to preclude LLMD from disclosing the financial terms of the settlement by filing a motion in the original case. *Id.*  However, the district court determined that it did not have jurisdiction over the matter because the settlement was not made part of the record, not incorporated into an order of the court, and the court did not manifest an intent to retain jurisdiction. *Id.*  Accordingly, the plaintiffs initiated a new matter. *Id.*

In seeking to enjoin LLMD from disclosing the terms of the settlement, the plaintiffs argued that the exception for disclosure as "required by law or by judicial or administrative process or regulation" is inapplicable where a party "voluntarily and consciously invoked the 'judicial process' by initiating a state court action." *Id.*  Noting the lack of precedent, the district court applied Pennsylvania law to construe the settlement agreement. *Id.* at 372–73.  The district court concluded:

> The agreement in this case, according to its plain meaning, does not prevent a party from bringing a bona fide lawsuit in which the settlement figure must

necessarily be disclosed in order to obtain legal redress.  Certainly all parties to the settlement must have been aware of the distinct possibility of a lawsuit by LLMD against its expert for either breach of contract or negligence.  The events in question had occurred in the courtroom before their very eyes.  Had the parties wished to define more narrowly the "required by law" exception to confidentiality so as to deal with the present situation, they could have done so.

*Id.* at 373–74.

The district court further reasoned that although LLMD was not compelled to file the state court action, "[a] legal requirement is not limited to a situation where failure to comply will result in a fine or other punitive order."  *Id.* at 373.  Rather, [t]he law requires many acts where the consequence for failure to comply is not punishment per se but the denial or loss of an important right or privilege.  Such acts are in reality just as much legal requirements as where punitive action may result."  *Id.*

Defendants argue the case is distinguishable, because here, unlike in *Marine Midland*, (1) the agreement in question, the Protective Order, is a court order and not a private settlement contract, (2) there is no basis to believe the parties contemplated an entirely new action when stipulating to the Protective Order, (3) to the contrary, the Protective Order explicitly states that confidential information "must be used only for purposes of this action," (4) Plaintiffs' unilateral disclosure was not "necessary" because they had the ability under the Protective Order to seek to de-designate the April 2018 Minutes and the ability to seek leave to add the new claims to the instant case or to obtain other relief from the Court or from Defendants, and (5) Plaintiffs do not contend that the contents of the minutes "must necessarily be disclosed" for them to obtain legal redress. (ECF No. 85 at 5.)  For the foregoing reasons, the Court agrees that the factual scenario before the Court in *Marine Midland* and the one before this Court are distinguishable. Plaintiffs offer no argument or facts to suggest that they would have lost their opportunity to pursue their claim unless they acted when and how they did.  Thus, Plaintiffs' argument that their disclosure in this context was "required by law" is unavailing.

///

15

19-cv-02141-JM (JLB)

Nothing prevented Plaintiffs from moving to modify the Protective Order so it could use the April 2018 Minutes in collateral proceedings. In *CBS Interactive, Inc.*, for example, the plaintiff sought to broaden the protective order provision regarding access to and the use of protected material "to allow it to use such material in another forum." 257 F.R.D. at 205. Specifically, the plaintiff asserted that it needed to be able to use the information produced by the defendant "to pursue claims for trade secret misappropriation in state court against [the defendant] and others." *Id.* In order to accomplish this, the plaintiff filed a motion to modify the protective order and the court determined that it met its burden of showing good cause to modify the protective order. *Id.* at 204–06. Such a procedure was available to Plaintiffs in this case, but they chose not to follow it. By failing to file a motion to modify the protective order, Plaintiffs did not give Defendants an opportunity to object and obtain any necessary protections. *See, e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (modification of a protective order should generally be granted where "reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy"); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) (noting that although the potential for modification of a protective order may discourage parties "from disclosing for fear of forced disclosure in a later action," the parties' legitimate privacy interests can be protected by imposing the same restrictions on any intervenors as those contained in the original protective order).

In producing documents in this case, Defendants relied on the provision in the Protective Order that all documents deemed confidential "must not be used for any purpose other than in connection with this litigation, unless and until such designation is removed either by agreement of the parties, or by order of the Court." (*See* ECF No. 45 at 4–5.) Courts commonly uphold such limitations. *See, e.g.*, *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 353 (N.D. Cal. 2003*)* (considering a protective order limiting use of confidential materials obtained in discovery to the instant litigation to be "a routine measure"); *Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989) (finding that the provision in the protective order which restricted use of discovery materials "to

19-cv-02141-JM (JLB)

this litigation" was not "unduly constricting"); *United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2016 WL 6542729, at *8 (C.D. Cal. Mar. 14, 2016) (collecting cases).

Moreover, courts have found that parties violated the terms of such a provision by using protected information as the basis for a new lawsuit without permission. *See, e.g.*, *On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997) ("The purpose of the Order is to limit the use of confidential information to this case. By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the Protective Order."); *Townshend v. Rockwell Int'l Corp.*, No. C99-0400SBA, 2000 WL 433505, at *17 (N.D. Cal. Mar. 28, 2000) (finding the defendant did not comply with the literal terms of the protective order where it obtained confidential information in a state court action and used that information in a federal forum to assert a counterclaim and the state court protective order "expressly provided that confidential information would be used 'solely in connection with this litigation'").

Here, Defendants were entitled to rely on such a provision, which the parties stipulated to, and Plaintiffs have failed to establish that their interpretation of "required by law" exempted them from complying with the Protective Order and seeking modification of the Protective Order or de-designation of the April 2018 Minutes before using them in *Ludwig II*.

## 2. Public Policy

Next, Plaintiffs argue that California law, "which must be applied in a diversity case, prohibits an employer like Ludwig from requiring information about illegal workplace discrimination to be kept confidential." (ECF No. 83 at 12.) Plaintiffs rely on California Labor Code § 1102.5, which provides:

> (a) An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance,

1

2

or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

3

4

5

6

Cal. Labor Code § 1102.5(a).

7

Although this provision of the California Labor Code would preclude Defendants

8

from making, adopting, or enforcing any rule, regulation, or policy preventing Plaintiffs

9

from disclosing information regarding a workplace violation, it does not exempt Plaintiffs

10

from complying with the Protective Order. Nor does it make the Protective Order void as

11

against public policy and unenforceable.[10]

12

Pursuant to California law, a contract must have "a lawful object" or it is void. *See*

13

*Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 541 (2004) (citing Cal.

14

Civil Code §§ 1550(3), 1596, 1598, 1668, 1667, 1441). The Protective Order entered in

15

this case does not have an unlawful object; rather it is a standard order of the type frequently

16

entered by litigants to facilitate discovery. Here, both parties stipulated to it, it can be

17

modified by agreement of the parties at any time, subject to approval by the Court, and the

18

Court may modify the terms and conditions of the order for good cause, or in the interests

19

of justice, or on its own order at any time. (*See* ECF No. 45 ¶¶ 25, 27.)

20

If Plaintiffs believed the April 2018 Minutes were improperly designated in violation

21

of public policy, paragraph 13 of the Protective Order sets forth the procedure to object to

22

the designation. (*Id.* ¶ 13.) Plaintiffs were not permitted to unilaterally determine that a

23

provision of the Protective Order was void as against public policy such that they did not

24

25

26

27

28

[10]    "To determine whether a contract is unenforceable based on public policy, California courts 'essentially engage in a weighing process, balancing the interests of enforcing the contract with those interests against enforcement.'" *Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2017 WL 588390, at *6 (S.D. Cal. Feb. 14, 2017) (quoting *Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1082 (2003)).

need to comply with its provisions.  As one court stated: "To the extent Plaintiff's counsel contends the materials designated as 'CONFIDENTIAL' were improperly marked, Plaintiff should have challenged these designations before the Court prior to publicly filing them.  Plaintiff's counsel could not simply unilaterally decide that the materials were improperly designated." *Nishimoto v. Cnty. of San Diego*, No. 16CV1974-BEN-LL, 2019 WL 1242963, at *3 (S.D. Cal. Mar. 18, 2019); *see also Brady v. Grendene USA, Inc.*, No. 3:12-CV-0604-GPC-KSC, 2015 WL 3554968, at *3 (S.D. Cal. June 5, 2015) (stating that whether a document "*should* be designated confidential is irrelevant to [a party's] obligation to comply with the Protective Order"); *Brocade Communs. Sys. v. A10 Networks, Inc.*, 2011 U.S. Dist. LEXIS 99932, at *14 (N.D. Cal. Sep. 6, 2011) ("It is not up to the party filing a document containing information designated as confidential by the other party to make a subjective decision about whether the designation is accurate.  That decision is for the court to make.").

### 3. Rules Enabling Act

Lastly, Plaintiffs argue that the Protective Order "should be construed in a manner consistent with the Rules Enabling Act."  (ECF No. 83 at 14.)  The Rules Enabling Act provides:

> (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

> (b) Such rules shall not abridge, enlarge or modify any substantive right.  All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

28 U.S.C. § 2072(a), (b).  Plaintiffs note that the Protective Order is based on the authority of Federal Rule of Civil Procedure 26 and has the purpose of protecting the confidentiality of certain information "as is contemplated by" Rule 26(c)(1)(G).  (*Id.* at 14–15; *see also* ECF No. 45 at 1–2.)  Plaintiffs then contend that it would "be neither practical nor

appropriate" under the Act "to order confidential treatment of materials that California law says an employee cannot be prevented from disclosing." (ECF No. 83 at 15.)

For the reasons stated above in addressing Plaintiffs' public policy argument, the Court does not find that the Rules Enabling Act permitted Plaintiffs to unilaterally determine that they did not need to comply with the Protective Order.

## B.    Appropriate Sanctions

In their Motion, Defendants request: (1) the entry of an order precluding Plaintiffs from using the April 2018 Minutes in evidence or argument in connection with *Ludwig II*; (2) an order requiring Plaintiffs to reimburse Defendants for reasonable attorney's fees and costs incurred in litigating this dispute; and (3) an order requiring Plaintiffs to reimburse Defendants for reasonable attorney's fees and costs incurred in moving to dismiss that part of Plaintiffs' age discrimination claim in their new action that is premised on the April 2018 Minutes. (ECF No. 80-1 at 4–5.)

"In determining whether to issue sanctions, or what forms the sanctions should take, a court must look to the totality of the circumstances surrounding each violation." *Apple, Inc.*, 2014 WL 12596470, at *5. Rule 37(b) provides a wide range of sanctions, which "may serve either remedial and compensatory purposes or punitive and deterrent purposes." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 (9th Cir. 1983). Although the court has broad discretion to fashion remedies to address the misconduct, the harshest sanctions, such as exclusion of evidence or dismissal, are to be reserved for cases of bad faith or willful misconduct. *Apple, Inc.*, 2014 WL 12596470, at *5.[11]

---

[11]    "In ascending order of harshness, the district court may: require the delinquent party or his attorney to pay the reasonable expenses, including attorney's fees, incurred by the innocent party as a result of the failure to obey the order; strike out portions of pleadings; deem certain facts as established for purposes of the action or preclude admission of evidence on designated matters; dismiss all or part of the action; or render a default

19-cv-02141-JM (JLB)

1          1.   <u>Background</u>

Plaintiffs violated the Protective Order on three separate occasions.  Prior to filing *Ludwig II*, Plaintiffs shared the April 2018 Minutes with new counsel not involved with *Ludwig I* and not listed as counsel in the Protective Order.  (ECF No. 45 ¶ 3.)  Subsequently, Plaintiffs filed complaints with the DFEH which quoted language from the April 2018 Minutes.  (Markowitz Decl. ¶ 5.)  Lastly, Plaintiffs publicly filed a complaint which referred explicitly to the April 2018 Minutes and quoted language from the minutes in alleging their age discrimination claim under FEHA.  *See Ludwig II*, ECF No. 1 ¶¶ 29, 62.

On July 6, 2021, Defendants filed a motion to dismiss the complaint in *Ludwig II*. *Ludwig II*, ECF No. 14.  With respect to Plaintiffs' age discrimination claim, Defendants argue that the claim fails to state a claim upon which relief can be granted because Plaintiffs have not and cannot allege a *prima facie* case of age discrimination.  *Id.* at 2, 24–26.  In their motion, Defendants quote the same language from the April 2018 Minutes contained in the complaint.  *Id.* at 25.  Defendants argue that "Plaintiffs plead no facts explaining what [the term ███████████] means, much less facts that its use here supports an inference of discriminatory intent directed at Plaintiffs."  *Id.*  The motion to dismiss is fully briefed and remains pending.

Plaintiffs moved to de-designate the April 2018 Minutes a month after filing *Ludwig II*, along with 1,712 other documents.  (ECF No. 67; *see also* ECF No. 75 (noting the inclusion of the April 2018 Minutes, which are bates numbered LUDWIG_0001437– 50).)  In their initial motion, Plaintiffs made no specific argument with respect to the April 2018 Minutes.  Plaintiffs did not raise their required by law, public policy, or Rules Enabling Act arguments in that motion.  With respect to Minutes of the Board of Directors of Ludwig, Plaintiffs simply argued that they "do not contain detailed nonpublic information about research that would rise to the level of a trade secret nor do they contain

---

judgment against the disobedient party."  *Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1369.

confidential commercial information, the disclosure of which would cause specific prejudice or harm."  (ECF No. 67-1 at 6–7.)

In opposing Plaintiffs' motion, Defendants attached the declaration of Defendant Edward A. McDermott, Jr., the President and Chief Executive Officer of Ludwig, who stated the following regarding the April 2018 Minutes:

> The [Scientific Advisory Committee ("SAC")] review process, as well as SAC meeting minutes and related documents are treated by the Institute as confidential, the purpose being to encourage open and candid engagement and discussion by and among members of the SAC.  I believe that public disclosure of category 1 and 3 documents, such as SAC minutes, would injure the Institute by chilling frank discussion and communications among SAC members and within the Institute.  Like any peer review arrangement, an expectation of confidentiality is essential to a fair and effective review process and SAC members, as well as their counterparts within the scientific staff of the Institute, all have an expectation their private deliberations and communications will remain private.  Similarly, with respect to documents like the above letters addressing internal policy and procedures, recruitment goals, and the like, making such documents public undermines the ability of the Institute to plan and recruit effectively and can result in employee morale issues if internal deliberations are exposed publicly.
>
> I consider Board minutes (category 2), as including minutes of Ludwig's Board of Directors meeting as a whole, as well as those of the Board's subcommittees, including the Executive Committee, Compensation Committee, and Audit Committee.  The meetings reflected in such minutes are similarly carried on under a generally understood umbrella of confidentiality to assure open and candid engagement.  Generally speaking, Board minutes are not distributed outside the Board and select members of the Institute's executive team. The April 24, 2018 Board minutes, for example, contain detailed discussion about the SAC's review of the San Diego Branch which, as described above, is highly sensitive and kept private in order to encourage open discussion.  These minutes also include comments by members of the Board regarding their goals for the San Diego Branch, which were made in confidence.  For the reasons outlined above, public disclosure of such materials will tend to chill frank and open discussion.

(ECF No. 75-3 ¶¶ 5–6.)

///

///

19-cv-02141-JM (JLB)

In their reply, Plaintiffs stated the following with respect to the April 2018 Minutes:

> The only document addressed with particularity is the April 2018 minutes, which Plaintiffs request should be reviewed in camera.[] Defendants argue the minutes should remain hidden because they include comments by the Board regarding review of the San Diego Branch and "their goals" for the Branch that would harm the Board's "frank" discussions if disclosed. McDermott Decl., ¶6. But just because facts could be bad for PR does not make them confidential. The Board's decision to close the Branch at the end of 2023 has already been made public knowledge, and Ludwig has willingly disclosed the Board's judgment. *See* Doc. 14-1, at 21 (quoting Board member's letter stating "The Board took the action it did because in its judgment the Branch is not having an impact on cancer commensurate with the quality and seniority of its scientists . . ."); *see also* Rego Decl., ¶3.d.

(ECF No. 78 at 8–9 (footnote omitted).)

In support of their motion, Plaintiffs did not lodge a copy of the April 2018 Minutes or attempt to file a copy under seal. (*See* ECF No. 45 ¶ 12.) Therefore, the Court has never seen or had an opportunity to specifically evaluate the April 2018 Minutes. The Court denied Plaintiffs' motion to de-designate without prejudice and gave Plaintiffs an opportunity to move again to de-designate certain documents or manageable categories of documents. (ECF Nos. 92, 94.) Plaintiffs have not done so, although they did file objections to the Court's order, which were overruled. (ECF Nos. 96, 102.)

### 2.   Sanctions

First, Defendants seek the entry of an order precluding Plaintiffs from using the April 2018 Minutes in evidence or argument in connection with *Ludwig II*. This requested relief, as proposed by Defendants, is too broad, but is granted in part. The Court orders that Plaintiffs cannot use the April 2018 Minutes, or its contents, for any purpose, including in evidence or argument in connection with *Ludwig II*, in violation of the Protective Order. Thus, Plaintiffs cannot use the April 2018 Minutes, or its contents, in any manner precluded by the Protective Order unless and until the April 2018 Minutes are de-designated, the Protective Order is modified, or the April 2018 Minutes fall under one of the categories listed in paragraph 22 of the Protective Order.

Next, Defendants seek an order requiring Plaintiffs to reimburse Defendants for reasonable attorneys' fees and costs incurred in litigating this sanctions dispute. The Court finds this remedy just and specifically related to the dispute at hand. Rule 37 provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also Nishimoto*, 2019 WL 1242963, at *4 (ordering counsel to reimburse the wronged party and their counsel for any and all costs and fees incurred in litigating a motion for sanctions for violation of a protective order). Here, as discussed above, the Court finds that Plaintiffs' violation was not substantially justified and there are no other circumstances that make an award of expenses unjust. Notably, the violations were not outside Plaintiffs' control.

Lastly, Defendants seek an order requiring Plaintiffs to reimburse Defendants for reasonable attorney's fees and costs incurred in moving to dismiss that part of Plaintiffs' age discrimination claim in their new action that is premised on the April 2018 Minutes. The Court declines to issue such a sanction. Defendants have not filed a motion to strike or redact in *Ludwig II* and do not base any part of their motion to dismiss on an argument that the complaint is based upon improperly disclosed information. Even if the motion to dismiss is tangentially related to Defendants' grievance here, the Court finds that the requested sanction is too indirectly related to the present dispute to be supported.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for sanctions (ECF No. 80). As discussed above, the Court **ORDERS** as follows:

1. Plaintiffs cannot use the April 2018 Minutes for any purpose in violation of the Protective Order, including in evidence or argument in connection with *Ludwig II*, unless and until the April 2018 Minutes are de-designated, the

19-cv-02141-JM (JLB)

Protective Order is modified, or the April 2018 Minutes fall under one of the categories listed in paragraph 22 of the Protective Order.

2.	The parties shall meet and confer on the subject of reasonable expenses, including attorney's fees, incurred by Defendants in moving for sanctions by **November 12, 2021**, after which the parties are to place a joint call to chambers advising the Court if either party wishes to be heard.

3.	If neither party wishes to be heard, Plaintiffs shall pay Defendants the amount of reasonable expenses, including attorney's fees, incurred by Defendants in moving for sanctions or before **December 3, 2021**.

4.	If either party wishes to be heard, then, on or before **December 3, 2021**, Defendants shall file a declaration attaching sufficient evidence to show the hourly rates of their attorneys and whether those hourly rates are reasonable rates in the Southern District of California for work of similar complexity by attorneys with comparable skill and reputation.  As part of any such declaration, Defendants must include any appropriate documentation substantiating the actual fees and costs expended in opposing the motion for sanctions and as well as the fees and costs expended in preparing the to-be-filed declaration and any exhibits thereto.

5.	Plaintiffs shall file any opposition to the imposition of a monetary award on or before **December 17, 2021**.

**IT IS SO ORDERED.**

Dated:  October 27, 2021

Hon. Jill L. Burkhardt
United States Magistrate Judge

19-cv-02141-JM (JLB)